I'd like to reserve five minutes for rebuttal. May it please the court, this is technically a child pornography case, but I believe the sentencing that occurred in this case and the rubric that surrounds the issue is really one having to do with child molestation. And it's very difficult to advocate in favor of a defendant who's been convicted of this conduct without appearing to be trying to minimize or excuse. Not at all, it's a legal issue. It is a legal issue. At the same time, Eighth Amendment jurisprudence, to me, has much of the flavor of you know it when you see it. Certain sentences are just so beyond the pale that I'm hoping to appeal to your sense that this qualifies even if I can't find the exact case that would say such and such was balanced the incorrect way or whatever. There's a statement that was being made in this case by the district court to Mr. Cobler, and I'd like to recognize Mr. Cobler's grandfather is in the courtroom. He's come down from Winchester. There was a statement being made by the district court in imposing the sentence to Mr. Cobler that there was nothing you could have done that's worse in the opinion of the American people than what you have done. There is literally nothing. What bothers me about that is that while it was a terrible case of molestation, we still need to make meaningful distinction between types of behavior. This was not a case. Let's talk about the law, though, Ms. Lee. And I think this will help kind of channel things. Because, you know, frankly, I mean, it's a terribly tragic thing that happened, and this defendant's conduct was terrible. But really we're here on the issue of law and the issue of proportionality review in a term-of-year sentence. And I think it would be most effective for your presentation if you talk about the law regarding proportionality review in a term-of-year sentence. Yes, ma'am. Well, I certainly agree with the characterization of the relevant inquiry being as to whether it is so grossly disproportionate that it gives rise to an inference of unconstitutionality. Although, alternatively, I also have, of course, my argument that it was just a plain unreasonable sentence. Yes, ma'am. I understand the threshold inquiry and drawing from Judge Keenan's question to be whether proportionality review is available here, just as a threshold matter. So if you could start with that, that would be wonderful. Absolutely. And the other thing, a question that I have that I would appreciate if you would get to at some point, is how do you count sentences for purposes of proportionality review, individually or in the aggregate? Yes, ma'am. Interestingly, I began my opening brief defensively, saying this Court does not permit proportionality. My understanding of the law, and I had asked for an initial hearing on Bonk, my understanding was that this Court, in the series of three cases, has come to the conclusion that proportionality review is just plain unavailable for any term-of-year sentence. With respect to that, I was actually surprised that the government seems to be taking the position in its brief that it's not unavailable. What about United States v. Rhodes, 1985 Fourth Circuit case, where Judge Widener really predicted, I think, the outcome in Graham and the grossly disproportional analysis. Our first case addressing this after Solem, Judge Widener says that, essentially, that there is Eighth Amendment review for gross disproportionality, and if there is, once that review is conducted, you don't have to go any further if the sentences are not disproportionate within the meaning of the Eighth Amendment. He says this really clearly, that an extensive proportionality analysis is only required in cases involving life sentence without parole. But the Court never says, and this is the first case, so this would be the controlling case, in the absence of in-bank review. This case never says that you don't get proportionality review for term-of-years. It says that in non-capital cases, successful proportionality challenges will be extremely rare. And then he says you look to whether the conduct is grossly disproportional, which is exactly what Judge Kennedy said in Harmelin in 1981 and what the Court said in Graham in 2010. So why hasn't the Fourth Circuit . . . The Fourth Circuit may have strayed in the ensuing cases, but why hasn't our first case to speak on this pretty clearly said you do get this threshold level of inquiry under the Eighth Amendment? I'm sorry, the first case did say that. Rose. Yes, it was the third case. Right, but the first case is the one that counts, isn't it? I'd like to say yes. If there hasn't been in-bank review, don't we have to . . . I'd like to say yes. Isn't our case law pretty established that our earliest case to speak, if there is a conflict among the cases, is the first case absent in-bank review and clarification. The first case controls. I absolutely would like to adopt that position and consider the later case that says it's unavailable to be essentially . . . I don't know if the term is a dead letter, but not the law. Not following . . . Not controlling. I absolutely would like to take that position. Alternatively, of course, there's the more obvious point, which is that this is a life sentence. In fact, it's a term of years. It's a term of years that far exceeds the life of any . . . The Supreme Court hasn't said that. There's no alternative. Either you're going to take that position or you're not going to be here. Basically, Judge Keenan articulated it in a concurring opinion, just what Judge Keenan has said, and that is the earlier case controls. That's where you need to hang your head on. There's no alternative that this is a really bad life sentence, the whole bit. You're not going to get anywhere with that because this is a term of years type of portionality review you're seeking. Clearly, it's either they are not. With that invitation, I'll certainly adopt the position that the first case controls. I'm inviting you. I'm just sort of pointing you to where the law is on it. Proportionality review is available, and the test is it grossly disproportionate? Yes. The Fourth Circuit, I guess, has strayed in some language in some subsequent cases, and that has not altered its original position, which is consistent with every other circuit and with the United States Supreme Court. Basically, that proportionality review on an eight-minute is discretionary in this kind of case. It's unusual. It's unusual. It's unusual, but discretionary. The review is not discretionary. I'm reading you the language from Judge Keenan and Judge King's opinion. He says it's discretionary. Yes, sir. It's a good thing for you. I appreciate it. Well, your answer is it's not discretionary because it's a constitutional right. Isn't that what your answer is? I have two answers. One is it's a constitutional right, and alternatively, that this court should exercise its ability to review it in this case because it is so disproportionate. So you're saying it's grossly disproportionate. I'm absolutely saying that, yes. I am saying that for a number of reasons, much of which is reflected in the statistical information and the historical information that I've provided to the court and the different appendices. What's grossly disproportionate? Because this gets back to my question. Yes. I would like to address that, actually. I believe that the sentencing guidelines, well, first of all, I'd like to make the point that district courts sentence the person. They sentence what has this person done. Well, no, they don't. I mean, they are at least not untethered from counts. It's tethered to the counts that the government elected to bring in that case. Right. But the court doesn't sentence a person irrespective of the counts of which the person is convicted. Not irrespective, but they're sentencing the conduct more than ñ because, in fact, this is a child porn case, then. I mean, what he actually did to the child would have no relevance. But he's sentenced to 30 years for each of three counts. He was charged with counts. And all I'm asking is what's the sentence that we look at for purposes of determining whether it is grossly proportionate? The sentence you're looking at is the aggregated amount under the sentencing guidelines. And if you could just point me to that, that'd be great. Point you to ñ my basis for saying that is the way the sentencing guidelines direct the district court to create different subgroups, but then to take the highest of these. And we're going to be balancing these counts against other counts and coming up with one number that the client then  But you see that telling me that you take the highest of them doesn't lead to the answer that you just gave me. The sentencing guidelines give you one sentence. It used to be under the old system you'd get a number of sentences. Some would run consecutive. Some would run concurrent. And most state systems or many state systems are still like that. The federal system is not like that. In the federal system, all of your conduct comes together in a pre-established scheme called the sentencing guidelines, and it leads the district court to come up with one number for your conduct. In the way that the law is now, the court then looks at that number and compares it, does this match what he did? Let me ask it this way, and I'm really not trying to be argumentative. I'm trying to get to an answer. We have said that Eighth Amendment analysis focuses on the sentence imposed for each crime, not on the cumulative sentence for multiple crimes. I'm sorry, what is the citation of that case? That's Ming, which you don't Ling. Yeah. Ling was the same case. I'm sorry, Ming Hong, which you think has been And that's the same case that we're now saying may not be good law. May not be good law, but that's the Yes, ma'am. That's the other part of how do we get around precedent, and I don't know that Rhodes spoke to that. It is not the case in this case. All child pornography cases are going to have a number of subcounts. How many subcounts that comes out to be depends totally on the discretion or the prerogative of the charging prosecutor. Obviously, I think every last case cited had, nobody had one picture on their computer who went to jail for this. No one had one picture. Some people had 5, 10, I think 50 victims, and it was pled down to one count. Child pornography, by its nature, is empirically involving a number of images which could be charged separately. And in this case But that isn't what happened here. He was charged separately for producing, transporting, and possessing. So that's, it doesn't, as I understand it. I would submit that it's the kind of conduct that would normally have been charged as a single count. This is someone who, in the course of just a matter of days or at most two-week period, committed these acts against this child, photographed it, did not upload it to the Internet, but did put it on their computer. And it's not a situation where we have, 10 years later, we have another victim. But that happens all the time in prosecution. These were discrete acts, and as long as they're discrete acts, they can be separately charged. And they were separately charged, which is, we did not challenge a charging decision. Exactly. But we would ask, we need the courts to say, is this one course of conduct that I'm punishing? And this is clearly one course of conduct. No, it's a series of discrete, separately charged acts that were being punished. Separately charged does not mean that they're separate. Well, why doesn't it for our purposes? Because the sentence is a single sentence that the person is serving. Well, it isn't a single sentence. It is always possible for sentences to be imposed consecutively or concurrently. But that doesn't make a consecutive sentence the total sentence for an offense. The mere fact that they are consecutive means they are separate. Because you couldn't have a consecutive offense without there being more than one offense. They are legally separate, but it was an abuse of discretion not to see them as one. Well, you didn't argue that it was a, are you arguing that it was an abuse of discretion to sentence him consecutively? You didn't make, that would be a new argument and I don't. No, I argued. I don't know that a district court doesn't have the authority to have a. It's one sentence. We have a judgment and we have one sentence. You're asking us to look at the underlying conduct and say it's really all the same thing. And none of the proportionality cases in the Supreme Court or this court looks at the nature of the conduct. What it does in terms of determining whether there is one or more offense. The gross disproportionality analysis looks at the severity of the sentence versus the gravity of the offenses. Here you have multiple offenses, each individually very grave. And so then we have to see is this as a threshold matter grossly disproportional? And see, I'm having trouble. Even with the law on your side, how can you say that this is grossly disproportional when these are, I mean, the Supreme Court in Harmelin said that a first-time drug offender, it was not disproportionate to give him life without parole. Right. Okay? So if it's not disproportionate grossly to give a person life without parole for being a drug distributor, first-time offender, how in the world could we say it's grossly disproportional to give somebody a term of year sentence to this extent who has quite potentially ruined the life of this human being? I mean, so when you look at the analysis in Harmelin in the Supreme Court, and the Supreme Court only once has found gross disproportionality, and that was in Solem. And that was a guy who wrote a bad check for $100. This person, you know, with no disrespect, your client did a lot more than write a bad check for $100. And so how, using the Supreme Court's analytical framework in Solem and Harmelin and ours in Rhodes, how do you possibly come up with saying that the sentence is grossly disproportionate? We compare it to what two things, what other people receive who engage in similar conduct, and what penalties are provided. No, the comparative analysis doesn't work in determining gross disproportionality. The comparative analysis kicks in at step two. If you do, in the rare instance, as Solem says, establish gross disproportionality, then you start looking and comparing. You know, since this looks like it's a real problem, we better take a closer look. And then you compare, you know, within the jurisdiction, you go out of the jurisdiction, and that's when you do that, but not at the gross disproportionality stage. I appreciate the Court's questions, and I would like an opportunity to research this different question about having to do with the separate counts versus the one count. This is something that I feel like I have not anticipated properly, and I would ask an opportunity to research it. Let us consider that, determine whether we wish to request supplemental briefing. Yes, ma'am. Thank you. Thank you. Good afternoon. Jean Hudson here with the United States. I'd like to start, jump right in, with my observation that there is a difference between the threshold inquiry regarding the inference of gross disproportionality and talking about the proportionality review, which encompasses the comparative analysis of intra- and interjurisdictional sentences. Why didn't you talk about Rhodes in your brief? I was pretty shocked. Why didn't we talk about Rhodes? Yeah. I mean, Rhodes presages Harmelin and presages Graham. Rhodes is a pretty good case for you. It is a good case for us. In fact— So why didn't you cite it or discuss it? I think this has been an evolutionary discussion in our office. I would have to say that. And at the time that we filed our brief, I think our position was, as I've outlined it there, which was to stay within the confines of Ming Hong and Malloy, and yet consistent with those cases and consistent with the earlier Supreme Court cases. Were you aware of Rhodes? Your Honor, I don't recall whether I was, in fact, aware of it. I don't recall making a conscious decision not to talk about Rhodes. I'll have to answer it that way. In fairness, you felt that our precedent gave you enough to work with? Yes, Your Honor, and that recognizing, of course, the order and the Hashim case had been issued there, and we had seen Judge King's discussion and his concurring opinion in that case, even though, of course, it didn't reach this issue. And we were certainly aware of Judge Gregory's order in that case as well, discussing the state of affairs. But we did feel that despite the broad language in Ming Hong and Malloy in both of those cases, and in many other cases too, the court had nonetheless gone ahead and engaged in the proportionality analysis to the degree that, even though it wasn't in this explicit terms, our interpretation was that the court had, in fact, answered the gross disproportionality question. Thank you. And the negative. Sorry. No, I'm sorry. You started out by distinguishing an influence of gross proportionality in the analysis. I believe I'm quoting you correctly. Yes, Your Honor. Can you finish your? I think that I really was trying to make the point that I think in looking back at all of the cases from this court and the Supreme Court, and, of course, when we look back at Polk, which Judge King pointed to in his concurring opinion, and just looking at this problem in the Fourth Circuit, Polk cited back to Whitehead, and Whitehead cited back to Rhoades, and, of course, Rhoades was interpreting Solemn. And the problem that Solemn v. Helm presented in light of the earlier decisions of Rommel v. Estelle and Hudevy Davis and whether or not the overriding primary foundational principle of deference to the legislative decisions was going to be the end all and be all of a decision in this area. And because, of course, in Solemn the court there found that a sentence was disproportionate, I think the court in Rhoades interpreted Solemn to mean that proportionality review, as they said in Rhoades, was not required under Solemn v. Helm. Extensive proportionality review was not required, that the court can take a look at the length of the sentence and determine whether it may be disposed of so obviously within the prerogative of Congress the simple matching of the facts of the case against the Solemn principles will suffice without extended discussion. That is what we do here. That's exactly right. And I think, Judge Keenan, you are absolutely correct that Rhoades predicted or presaged the situation that we find ourselves in now where it's maybe somewhat clearer even from the Supreme Court from Graham and Lockyer, although that statement was dicta in the Lockyer v. Andrei case, that there is in fact a principle of gross disproportionality that applies to term of year sentences and that the proper inquiry is, as the court has recognized initially, a very narrow question of whether or not the sentence as compared to the crime presents that inference of gross disproportionality. And as the cases have repeatedly stated, it is going to be the very, very rare case, the extreme case, where that inference is answered in the positive, Solemn being the one that we know of. So you do a kind of, you take a sort of threshold eyeball approach, is this sentence grossly disproportionate, which involves the preliminary assessment and then if you conclude that the answer is yes under Rhoades, you engage in the more extensive proportionality analysis. You're saying a comparative analysis. Is that your point? Is that what you're saying? Yes, ma'am. That's what I'm saying, Your Honor. Okay. But you win here on either one. We do. If you engage in the analysis, I mean, you look at the problems that are there, you win on either one. We certainly do, Your Honor. Our position is that the court should ask that initial question of whether or not this case presents an inference of gross disproportionality, that the answer to that is no, but that if the court were to engage in the comparative analysis, we would also win because of the reasons set forth in our brief. No, please finish your response. I did have another question, but please finish your response. Go ahead. That is our position. And in answer to the issue that came up during opposing counsel's argument, we have also pointed out in our brief that the fact that these sentences were stacked is a significant point for consideration in this court's analysis. I think, Judge Duncan, your question is answered by looking back. The question of whether the court looks at the collective, the cumulative sentence or the individual sentences, I think that question has to be answered by looking back at that foundational principle that was set forth in Solemn in these other cases regarding the great deference to the legislative decisions because the legislature makes these decisions that the court analyzes regarding what particular punishment or what sentencing scheme is appropriate for an offense, for a crime. Legislatures don't make decisions about collective conduct saying, well, if a person commits 1, 2, and 3, this would be the appropriate range of sentences, or if the defendant commits 25, 26, and 27, this would be the appropriate range. They make their legislative decisions based on crime, individual crimes, and that is what the court looks at in these cases to determine whether, in fact, there was a rational basis, which is the language that we see in Ewing and Harmelin and others, finding that Congress indeed had a rational basis for its sentencing decisions. So for that reason, we think that it is absolutely appropriate to look at these individual 30, 30, 30, 20, and 10 sentences that were imposed in deciding not only the threshold inquiry, but, again, if the court were to get past that, that there was no Eighth Amendment violation in this case. Of course, we also take the position as set forth in our brief that the sentence was within the properly calculated guideline range and, therefore, presumptively reasonable. And unless there are any further questions on that point, we'd rely on our brief. Thank you. Thank you. Ms. Lee, you have some time for rebuttal? I would like to, on Mr. Kobler's behalf, reiterate the importance of also focusing on the reasonableness of the sentence. The fact that it is a guideline sentence creates a presumption of reasonableness in front of this court, before this court, but it's not the end of the inquiry. And then, at that point, the comparisons to what similarly situated defendants have received in this jurisdiction and in other jurisdictions in the United States is absolutely relevant. So this court can avoid the Eighth Amendment question entirely and conclude that the sentence was unreasonable. And, honestly, this sentence, to me, seeing it as one sentence that the defendant must serve, especially under the unique situation in this case where he has such a short period to live, it really just about shocks the conscience. My experience has been, speaking even to someone within the Bureau of Prisons, every time I said 120 years, they said, do you mean 120 months? And I said, no, I mean 120 years. And, actually, there's nobody I've ever spoken to about this case who could have anticipated what this person received. So it is the requirement of this court to look at the substantive reasonableness, and the fact that it's a guideline sentence is just one component to consider. But also the fact that it appears that there's an element of punishing the defendant for having a transmittable disease. It's almost like he got an extra hundred years as a penalty. You go ahead. It was volitional conduct on his part. Knowing he had the disease, he still decided to molest this 4-year-old. The actual evidence was that he researched how to mitigate the danger of transmission and undertook that route. He still took the step. Yeah, and he still took the risk. Yes. This is where it becomes difficult to, but I would ask the court to still look at it analytically and say, is this literally, do we want to send the message to the world that this is the worst conduct that anyone, I mean there are people who intentionally infect others, and they would not have gotten more time, they could not have gotten more time than he got. So are we going to draw any of those distinctions? I would ask this court to reverse on reasonableness alone. Thank you. Thank you very much. And I appreciate the court's indulgence of my travel efforts this morning. The court is very sympathetic. Thank you.
judges: Allyson K. Duncan, Barbara Milano Keenan, James A. Wynn, Jr.